IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RAYMOND GREEN,
     Petitioner,

vs.                                        Case No.:  3:14cv274/LAC/EMT

JULIE L. JONES,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 19, 20).  Petitioner filed a reply (doc. 25).

     The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 20).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2006-CF-6169, with one count of trafficking in cocaine (400 grams or more but

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 20).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

less than 150 kilograms) (Count 1) and one count of conspiracy to traffic in cocaine (400 grams or more but less than 150 kilograms)  (Count 2) (Ex. C).  Following a jury trial on January 13–14, 2009, the jury found him guilty of the lesser included offenses of trafficking in cocaine (200 grams or more but less than 400 grams) and conspiracy to traffic in cocaine (200 grams or more but less than 400 grams) (*see* Exs. D, E).  Petitioner was sentenced to fifteen years in prison, with a 7-year mandatory minimum, on Count 1, with pre-sentence jail credit of 78 days, and a consecutive term of fifteen years in prison, with a 7-year mandatory minimum, on Count 2 (*see* Exs. F, G).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-1551 (Ex. H).  The First DCA affirmed the judgment on September 13, 2010 (Ex. K).  Green v. State, 43 So. 3d 924 (Fla. 1st DCA 2010).  The mandate issued September 29, 2010 (Ex. L).

On July 28, 2011, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. M).  In an order rendered September 1, 2011, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion "within a reasonable time" (Ex. N).  Petitioner filed an amended motion on September 13, 2011 (Ex. O).  The state circuit court granted a limited evidentiary hearing on two of Petitioner's claims, and appointed counsel to represent Petitioner (*see* Exs. P, Q).  After the evidentiary hearing, the court denied the amended Rule 3.850 motion in an order rendered January 18, 2013 (Ex. R).  Petitioner appealed the decision to the First DCA, Case No. 1D13-743 (Ex. S).  The First DCA affirmed the decision per curiam without written opinion on January 13, 2014, with the mandate issuing February 10, 2014 (Ex. U, V).  Green v. State, 130 So. 3d 230 (Fla. 1st DCA 2014) (Table).

Petitioner filed the instant federal habeas action on June 16, 2014 (doc. 1).  Respondent concedes that the petition was timely filed (doc. 19 at 24).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.

In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

　　　Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

　　　If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an

unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 562 U.S. at 102; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits

in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, see 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal

rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

416 F.3d at 1302-03 (citations omitted).[4]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state

_____

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; see also House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One:  "Petitioner's constitutional right to a fair and impartial trial was violated when the state trial court abused its discretion by allowing the prosecutor to display to the jury during closing argument transcripts of recorded conversations that had not been properly authenticated as accurate.  Thereby violating Petitioner's due process rights under the Fourteenth Amendment of the United States and Florida Constitutions."

Petitioner asserts that during trial, the prosecutor introduced into evidence, and published to the jury, audio recordings of several telephone conversations that were intercepted by law enforcement (doc. 1 at 7–16).  He asserts that the prosecutor sought to provide transcripts of the recordings to the jury, but defense counsel objected on grounds of accuracy (id.).  Petitioner asserts

the trial judge ruled that the transcripts were inadmissible (*id.*).  Petitioner alleges during closing argument, the prosecutor displayed transcripts of the recorded conversations on an overhead screen (*id.*).  He alleges defense counsel objected, but the trial court overruled the objection (*id.*).  Petitioner asserts he argued on direct appeal that the trial court erred by permitting the prosecutor to display the transcripts because they were not properly authenticated (*id.*).  He asserts the appellate court held that the trial court erred by allowing the prosecutor to display the transcripts; however, the error was harmless (*id.*).  Petitioner contends this ruling violated his constitutional rights to due process and equal protection under the Fourteenth Amendment of the Constitution, and was contrary to and an unreasonable application of federal law (*id.* at 15–16).  He asserts he presented this claim to the First DCA on direct appeal of his conviction (*id.* at 17).

Respondent contends Petitioner failed to exhaust a federal due process claim in the state courts (doc. 19 at 27, 34–36).  Respondent asserts that Petitioner argued on direct appeal that the trial court abused its discretion by allowing the prosecutor to display to the jury the transcripts of some of the recorded telephone calls that had not been properly authenticated as accurate; however, Petitioner relied solely upon state law in support of his claim (*id.*).  Respondent contends any attempt to return to state court to exhaust a federal claim would be futile, since Florida procedural rules do not permit a second appeal (*id.*).  Therefore, the claim is procedurally defaulted for federal habeas purposes (*id.*).

In Petitioner's reply, he contends that the substance of the federal nature of his claim was presented in his appellate briefs in a manner sufficient to put the state court on notice of the underlying federal constitutional claim (doc. 25 at 2–3).

The record demonstrates that in Petitioner's initial brief on direct appeal, he argued that the trial court erred by allowing the transcripts to be used as a demonstrative aid during closing argument, because the court failed to follow the procedure mandated by the Florida Supreme Court in <u>Martinez v. State</u>, 761 So. 2d 1074 (Fla. 2000) (*see* Ex. H).  Petitioner further argued that the trial court's error was not harmless, because other than the testimony of his co-defendants, all of whom agreed to testify in exchange for lesser sentences, the only evidence linking Petitioner to the sale of cocaine was the recorded telephone calls (*id.*).  Petitioner argued that the jury may have relied in part on the transcripts in finding him guilty (*id.*).  Petitioner did not mention his federal right to equal

protection or due process, nor did he cite a federal source of law in conjunction with his claim; instead, he cited only Florida state cases in his initial brief, and he argued that the trial court failed to follow the procedure established by the Florida courts for use of transcripts at trial (*id.*).[6] Therefore, the undersigned concludes that Petitioner failed to fairly present a federal claim to the First DCA on direct appeal.

As Respondent asserts, any attempt to return to state court to exhaust a federal claim would be futile, since Florida courts do not permit a second direct appeal.  Therefore, Ground One is procedurally defaulted for federal habeas purposes.  Petitioner has not alleged or shown cause for the procedural default; nor has he demonstrated he is entitled to review under any other recognized exception to the procedural bar.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B.     Ground Two:  "Petitioner's constitutional right to due process of law and effective assistance of counsel were violated, due to trial counsel's failure to investigate and advise Petitioner of sworn testimony of witness [sic] against Petitioner that explicitly incriminated Petitioner.  Thereby causing Petitioner to reject a favorable plea offer."

Petitioner alleges that prior to trial, the prosecutor offered him, through defense counsel, a plea offer of concurrent 15-year sentences if he pleaded guilty to both charges (doc. 1 at 18–25). He alleges that prior to his rejecting the State's offer, defense counsel failed to advise him of the sworn testimony of Kelly Dede and co-defendant Christopher Stanley, which implicated Petitioner in the crimes (*id.*).  Petitioner alleges their testimony was available to counsel, because it was included in discovery material provided by the prosecutor (*id.*).  Petitioner alleges counsel "talked to him about the testimony of Kelly Dede, Terrance Stallworth, and Christopher Stanley," but counsel "did not go into detail about what their testimony entailed" (*id.* at 22–23).  Petitioner also faults counsel for failing to inform him that Kelly Dede had previously testified at the trial of co-defendant Carlton Eugene, and the content of her trial testimony (*id.* at 20–22).  Petitioner alleges he thus did not know "the gravity" of Kelly Dede's testimony (*see* doc. 25 at 4).   He alleges he

---

[6] One of those cases, Martinez v. State, 761 So. 2d 1074 (Fla. 2000), discussed federal cases, specifically, decisions from the District of Columbia Circuit and the Fifth, Sixth, and Eighth Circuits. *Id.* at 1084–87.  However, the Martinez court did so only as persuasive authority for establishing the proper procedure to be employed by the Florida state courts for using transcripts at trial.  *Id.*  The Martinez court did not decide the procedural issue on federal equal protection or due process grounds.

assumed that Dede's testimony would be cumulative to the testimony of the other co-defendants, which "could not place any of Petitioner's illegal conduct within the time frames listed in the charging instrument," but her testimony at Mr. Eugene's trial "was substantially more than Petitioner believed she could have testified to" (*id.* at 4–5).  Petitioner alleges if counsel had advised him of the inculpatory testimony of Kelly Dede and Christopher Stanley, he would have accepted the State's plea offer (doc. 1 at 18).  Petitioner asserts he presented this ineffective assistance of counsel ("IAC") claim to the state courts in his Rule 3.850 motion (*id.* at 26).

Respondent concedes Petitioner exhausted this IAC claim in the state courts (doc. 19 at 27, 37).  Respondent contends the state courts adjudicated the claims on the merits, and the adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 38–55).

1.      Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process.  Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387.  The two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984), applies to claims that counsel was ineffective during the plea process.  Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

As previously discussed, Strickland's first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688).  The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the

circumstances." Strickland, 466 U.S. at 691. The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer."  Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial."  Id.  This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant.  Id.  Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea.  Id. at 1509.

*Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

### 2.      Federal Review of State Court Decision

Petitioner presented this IAC claim as Claim II of his amended Rule 3.850 motion (Ex. O at 115–18). The state circuit court cited the *Strickland* standard as applicable to Petitioner's IAC claims (Ex. R at 318). The court adjudicated the claim as follows:

> Defendant asserts that his counsel was ineffective for failing to advise Defendant of the existence of the prior sworn testimony of Kelly Dede and co-defendant Christopher Stanley. In summary, Ms. Dede, at deposition, indicated that Defendant was bagging cocaine in her presence and that she had seen Defendant bringing cocaine to the residence she shared with him. Defendant also indicates that on "April 13th and 20th, 2007 codefendant Christopher Stanley gave sworn testimony implicating [Defendant] as a partner in the drug trade with detail."

Defendant claims that, had his counsel properly advised him of this incriminating evidence, he would have accepted the State's 15-year plea offer.  An evidentiary hearing was convened regarding this claim, at which Defendant was represented by counsel.

In order to be entitled to postconviction relief on a claim of ineffectiveness regarding a plea offer, a defendant "must allege and prove that (1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced, (2) the defendant would have accepted the plea but for counsel's failures, and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed."  Morgan v. State, 991 So. 2d 835, 839–840 (Fla. 2008).

At [the] evidentiary hearing, Defendant stated that he had spoken with his counsel, Chris Ferry, about the discovery in the case, but that Mr. Ferry, "never gave me details, like broke it down into details about what they were going to say to incriminate me."  He did, however, acknowledge that his counsel told him that several of the co-defendants were going to testify against him, including Kelly Dede, Demarous Harris, and Terrance Stallworth,[FN 2] and that his attorney wanted him to accept the plea deal made by the state.  It does not appear that counsel reviewed the Carlton Eugene trial transcripts with Defendant; however, Mr. Ferry testified that he went over the potential witnesses and evidence with Defendant at length prior to his trial, and characterized the case against Defendant as "very damaging."  Mr. Ferry testified that Defendant "just didn't want the 15-year plea offer," but rather wanted him to continue to work to get a better offer based on a potential substantial assistance agreement.  Based on the totality of the evidence before the Court, the Court finds the testimony of Mr. Ferry credible, and concludes that Defendant was properly advised by his counsel prior to his rejection of the State's plea offer regarding the extent of the potential incriminating evidence against him.  The Court further concludes that Defendant has not demonstrated that he would have accepted the plea offer.  He is not entitled to relief on the basis of his second claim.

[FN 2:  Christopher Stanley did not testify at Defendant's trial.]

(Ex. R at 318–19).  Petitioner raised this issue in his initial brief on appeal to the First DCA (Ex. S at 5–6).  The appellate court affirmed the lower court's decision without written opinion (Ex. U).

The state court's factual findings as to the substance of the testimony adduced at the evidentiary hearing are supported by the transcript of that proceeding, which is part of the state court record (Ex. Q at 231–80).  As the state court found, Petitioner testified that defense counsel had informed him that co-defendants Kelly Dede, Demarous Harris, and Terrance Stallworth, were going to testify against him, but Petitioner testified that defense counsel "never gave me details, like broke

it down into details about what they were going to say to incriminate me." (*id.* at 233–34). Petitioner did, however, admit that he understood that the co-defendants would conceivably hurt his case (*id.* at 234). He also admitted that defense counsel told him that all three co-defendants were going to testify that Petitioner was involved in the drug trafficking and drug transactions (*id.* at 234–35). Petitioner testified that although defense counsel talked to him about what the co-defendants were going to say, counsel did not provide detail or provide him actual transcripts of their deposition testimony until the day of jury selection in his case (*id.* at 235–36). Petitioner testified that when he reviewed the transcript of Kelly Dede's deposition, he learned that she said she knew that Petitioner was selling cocaine, and that Petitioner and her (Dede's) boyfriend were partners in selling cocaine (*id.* at 236, 246). Petitioner testified that after he was convicted, he obtained a copy of Kelly Dede's testimony in co-defendant Carlton Eugene's trial and a copy of her sworn statement to Investigator Eli Lawson, and learned that she stated that she actually observed Petitioner "break down" and package cocaine at Mr. Eugene's house, which was the same testimony she provided at Petitioner's trial (*id.* at 237–38).

At the post-conviction evidentiary hearing, Petitioner also testified about the State's 15-year plea offer (Ex. Q at 234–35). He testified that he did not believe there was sufficient evidence to convict him of drug trafficking, because there was no evidence that he possessed or constructively possessed cocaine, so he thought that his sentence would be the same (a total of 15 years) if he lost at trial or accepted the plea offer (*id.* at 243). He testified that he told defense counsel that he wanted to go to trial unless counsel could "talk to the State to come down on the plea like between a five-year or a seven-year plea" (*id.* at 234–35). Petitioner testified that counsel responded, "Well, we can shoot for it because I don't think that you will get more than 15 years because they should have run the time consecutive—I mean, concurrent instead of consecutive. . . . Because they was [sic] both in the same criminal episode" (*id.* at 241–42). When asked whether he had sufficient information to make the decision about gong to trial versus accepting the plea, Petitioner testified yes (*id.* at 244).

On cross-examination, Petitioner admitted that defense counsel told him prior to jury selection that Kelly Dede would testify regarding Petitioner's role in the drug trafficking (Ex. Q at 247). Petitioner testified he reviewed the deposition transcripts of his co-defendants on jury

selection day and decided to accept the State's plea offer, but then changed his mind and went to trial (*id.* at 250).

Defense counsel, Chris Ferry, testified that in August of 2008 (more than four months prior to Petitioner's trial), he sent a copy of the State's discovery material to Petitioner, including deposition transcripts from some of the co-defendants, FDLE [Florida Department of Law Enforcement] interviews of co-defendants, DEA [federal Drug Enforcement Administration] interviews with co-defendants, excerpts of recorded telephone calls, and an audio disc of some of the recorded telephone calls from the county jail (Ex. Q at 258, 264–65). Attorney Ferry testified that he deposed twenty of the State's witnesses in October of 2008 (*id.* at 259). Ferry testified that he spoke with Petitioner on October 28, 2008, and they discussed the content of the depositions, the "damaging evidence," the content of wiretapped telephone calls, Investigator Eli Lawson's testimony regarding his interviews with the co-defendants, and other evidence against Petitioner that was revealed during the depositions (*id.* at 259–60, 273). Ferry testified that he told Petitioner that the evidence was "very damaging" (*id.* at 260). Attorney Ferry testified that he and Petitioner also discussed the State's 15-year plea offer (*id.* at 259). Ferry testified that he conveyed to Petitioner that if he was convicted at trial, he would be sentenced "well in excess of 15 years" (*id.* at 272). Ferry testified that even after they discussed the damaging evidence and the 15-year plea offer, Petitioner wanted Ferry to "try to get more" from the State (*id.* at 261). Ferry testified that he contacted the prosecutor and Investigator Eli Lawson, and they were receptive to making a better offer if Petitioner provided substantial assistance to law enforcement (*id.* at 260–63). Ferry testified that he discussed this with Petitioner, but Petitioner insisted he was unable to assist law enforcement because people already thought he was working with law enforcement and thus "will not deal with him" (*id.*). Attorney Ferry testified that during a court appearance on January 5, 2009, he explained to Petitioner how damaging the recorded telephone calls were, the length of the prison sentences that some of his co-defendants received, Petitioner's sentence exposure, and the State's plea offer (*id.* at 263–64, 267). Ferry testified that Petitioner signed a plea agreement for a sentence capped at 15 years, but then changed his mind before his case was called in front of the judge, and asked Ferry to talk to the prosecutor about a 7-year plea deal (*id.*). Ferry testified that he asked the prosecutor about a 7-year deal, but the prosecutor rejected it; however, the State was still entertaining the 15-

year plea deal even after Petitioner rejected it on January 5 (*id.* at 268–69).  Ferry reiterated that prior to jury selection in Petitioner's case, he explained to Petitioner the content of the depositions and interviews of the co-defendants (*id.* at 270).

After hearing this testimony at the post-conviction evidentiary hearing, the state court found the testimony of Attorney Ferry credible.  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); *see also* Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")). Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998); Smith v. Kemp, 715 F.2d 1459, 1465 (11th  Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").  Questions of the credibility and demeanor of a witness are questions of fact.  *See* Consalvo, *supra* (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  The AEDPA affords a presumption of correctness to a factual determination made by a state court, including credibility determinations; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e).

Petitioner has not overcome the presumption of correctness afforded to the state court's finding that Attorney Ferry's testimony was credible with regard to the information he provided Petitioner prior to Petitioner's final rejection of the State's plea offer.  Therefore, this federal court presumes that prior to Petitioner's final rejection of the State's plea offer, Attorney Ferry discussed with Petitioner the "very damaging" nature of the evidence against Petitioner, and he provided Petitioner with transcripts of the co-defendants' (including Kelly Dede's) depositions, interviews

with federal and state law enforcement officers, a transcript of Investigator Lawson's deposition during which he testified regarding the co-defendants' statements to law enforcement and wiretapped telephone conversations, and a CD containing recorded telephone conversations. Even if Attorney Ferry failed to inform Petitioner of the content of Kelly Dede's prior testimony at Carlton Eugene's trial, Petitioner failed to show that Dede's prior trial testimony was so much more incriminating than her other statements (which Ferry testified he provided to Petitioner) that it rendered defense counsel's performance during the plea process deficient under Strickland. Additionally, Petitioner failed to demonstrate that the state court unreasonably concluded that there was no reasonable probability Petitioner would have accepted the State's 15-year plea offer if defense counsel had informed him of the content of Kelly Dede's prior trial testimony. This is especially so since Petitioner did not completely reject the idea of pleading guilty to the charges, he simply wanted Ferry to negotiate a better deal.

Petitioner failed to demonstrate that the state court's adjudication of Ground Two was based upon an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to federal habeas relief on this claim.

C.   Ground Three: "Petitioner's constitutional Sixth Amendment right to effective assistance of counsel and Fourteenth Amendment right to due process of law under State and Federal Constitutions were violated when defense counsel failed to investigate the evidence against Petitioner and have necessary information to adequately defend Petitioner during trial by going to trial unprepared due to lack of diligence. Had defense counsel investigated the evidence he would have discovered that the taped phone conversations introduced by the State Attorney had been altered from their original contents."

Petitioner asserts Attorney Ferry failed to investigate the recordings of two wiretapped conversations that occurred on April 2, 2006, one conversation between Christopher Stanley and Kelly Dede, and the other conversation between Christopher Stanley and Carlton Eugene, which were admitted at trial as State's Exhibits 1 and 2 (doc. 1 at 26–27). Petitioner alleges defense counsel failed to discover that both recordings had been altered from their original form in that they "contained added and deleted portions" (id. at 28). Petitioner alleges the same recordings were admitted as evidence at the trial of co-defendant Carlton Eugene (id.). Petitioner alleges after his own trial, he obtained a transcript of his trial and Carlton Eugene's trial, and upon comparing the two, discovered that the transcripts differed as to the content of those two recorded conversations

(State's Exhibit 1 and 2) (*id.*).  Petitioner contends Attorney Ferry was ineffective for failing to investigate the accuracy of the recordings used in his trial, and if counsel had investigated, he could have objected to admission of the recordings on the grounds that the State used fabricated evidence, in violation of <u>Giglio v. United States</u>, 405 U.S. 150 (1972), or the State failed to disclose evidence favorable to the defense, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (doc. 1 at 28–30; doc. 25 at 7–10).  Petitioner asserts he presented this IAC claim to the state courts in Ground III of his amended Rule 3.850 motion (doc. 1 at 26, 30).

Respondent concedes Petitioner exhausted this IAC claim in the state courts (doc. 19 at 27, 57).  Respondent contends the state courts adjudicated the claims on the merits, and the adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 57–63).

     1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

     2.      Federal Review of State Court Decision

Petitioner presented this IAC claim as a sub-claim (sub-claim "A") of Claim III of his amended Rule 3.850 motion (Ex. O at 119–20, 121–25).  The state circuit court adjudicated the claim as follows:

> Defendant first asserts that had counsel properly investigated the tapes introduced as State's Exhibits 1 and 2, he would have discovered that the recordings had been altered, because "[b]oth recordings have added and deleted portions."
>
> Regarding Defendant's claim that Exhibits 1 and 2 had been "altered," the record shows that Eli Lawson testified that he reviewed the exhibits, and that they were the "same calls that were intercepted that night."  <u>Attachment 7</u>, at pages 26–27. It appears that the basis for Defendant's claim that the recordings had been "altered" is that the same recordings were introduced in Mr. Eugene's trial, and certain differences appear in the transcription. Defendant has attached the transcript of the recordings as introduced in Mr. Eugene's trial.  <u>See Motion</u>, Exhibit C and E; <u>see also</u> <u>Attachment 7, pages 32–36; and Attachment 8, pages 149–150, 186–187</u>. Defendant refers to Exhibit C and E as a transcript of the "actual conversations." After review, it appears to the Court that the "differences" between the two transcripts are largely due to the fact that more portions of the recordings were deemed "inaudible" in the instant case.  The record also demonstrates various minor transcription variations.[FN 4] Defendant presented no testimony at [the] evidentiary hearing which indicated that the conversations were deliberately altered by anyone in any way.

[FN 4:  The Court would note that the record shows that there were some issues with regard to playing the recordings at Defendant's trial.  <u>See Attachment 7</u>, at pages 32 and 34.  It is logical that this difficulty contributed to the transcription differences.]

It is true that the recording of the conversation between Ms. Dede and Mr. Stanley and the recording of the conversation of Mr. Eugene and Mr. Stanley as transcribed at Mr. Eugene's trial implicates Mr. Eugene, because they indicate that Mr. Eugene "ran out of bags, stopped at 24" and asked Mr. Stanley, "Ruff can't finish that?"  The calls also indicate that Mr. Stanley said he was going to send "the rest of them bags over there by Ruff."

However, while these conversations incriminate Mr. Eugene, they do not necessarily exculpate Defendant.  Rather, the recordings under either transcription tend to show Defendant's involvement in the enterprise.  Defendant has failed to show that his counsel was deficient with regard to these recordings or that he was prejudiced.

(Ex. R at 319–21).  Petitioner argued this issue on appeal to the First DCA (Ex. S at 6).  The appellate court affirmed the lower court's decision without written opinion (Ex. U).

In Petitioner's amended Rule 3.850 motion, Petitioner based his argument upon a comparison of the transcript of his trial, which included the court's reporter's transcription of what she heard as State's Exhibits 1 and 2 were being played to the jury (*see* Exhibits B and D of the amended Rule 3.850 motion), and a comparison of the transcript of Carlton Eugene's trial, which included the court's reporter's transcription of what she heard as the same audio recordings were played to Carlton Eugene's jury (*see* Exhibits C and E of the amended Rule 3.850 motion) (Ex. O at 121–24,147–55).[7]  The transcripts were prepared by the court reporter in each case and thus reflect only what each court reporter heard during the respective trial.  The fact that the court reporters' transcriptions of the audio recordings played at each trial differed does not suggest that the audio recordings themselves were different.

---

[7] Petitioner also appended to his amended Rule 3.850 motion the court reporter's transcription of the audio recordings of the phone calls from the county jail (State's trial Exhibits 6, 7, and 8) (appended to the Rule 3.850 motion as Exhibits H, J, and L) and the purported transcripts of those recordings that the prosecutor used as a demonstrative aid during his closing argument (appended to the Rule 3.850 motion as Exhibits I, K, and M) (*see* Ex. O at 160–99). However, those recordings are not the subject of Ground Three.

As the state court found, Petitioner failed to present any evidence that the audio recordings of the wiretapped conversations (State's Exhibits 1 and 2) were altered by anyone in any way.  In the absence of any evidence of alteration, Petitioner failed to show a factual or legal basis for defense counsel to object to admission of State's Exhibits 1 and 2 on the ground that the recordings were inaccurate, fabricated, or altered, or that the State violated <u>Giglio</u> or <u>Brady</u>.  Petitioner failed to demonstrate that the state court's adjudication of Ground Three was based upon an unreasonable determination of the facts, or was an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to relief on this claim.

> D.     <u>Ground Four:  "Petitioner's constitutional Sixth Amendment right to effective assistance of counsel and Fourteenth Amendment right to due process of law under State and Federal Constitutions were violated when defense counsel failed to investigate the evidence against Petitioner and have the necessary information to adequately defend Petitioner during trial, by going to trial unprepared due to lack of diligence.  Had defense counsel investigated the evidence he would have discovered [ ] prior sworn testimony that could have been used to impeach State witness Officer Eli Lawson and could have been used to support the defense."</u>

Petitioner claims that defense counsel was ineffective for failing to investigate and discover Investigator Eli Lawson's prior testimony at Carlton Eugene's trial, on April 20, 2007 (doc. 1 at 30–34; *see also* doc. 25 at 10–12).  Petitioner alleges Lawson testified at Mr. Eugene's trial that Petitioner was not at Eugene's house packaging cocaine on a particular date, and instead, Petitioner was with Christopher Stanley in Milton, Florida (*id.*)  Petitioner asserts this prior testimony could have been used to impeach Kelly Dede's testimony that Petitioner was at Carlton Eugene's house packaging cocaine on the particular day in question (*id.*).  Petitioner also asserts defense counsel could have presented the testimony of Christopher Stanley to verify that Petitioner was with him in Milton on the day he was accused of packaging cocaine at Carlton Eugene's house (*id.*).

Petitioner asserts that another portion of Investigator Lawson's prior testimony could have been used to impeach Lawson himself (doc. 1 at 30–34; *see also* doc. 25 at 10–12).  Petitioner alleges Investigator Lawson testified at Carlton Eugene's trial that audio recordings of two wiretapped telephone calls (the same recordings that were admitted at Petitioner's trial as State's Exhibits 1 and 2) were "fair and accurate" (*id.*).  Petitioner contends defense counsel could have used this prior testimony to impeach Lawson's testimony that the recordings admitted into evidence

at Petitioner's trial were "fair and accurate," since the court reporter's transcription of the recordings at each trial differed (*id.*).  Petitioner asserts he presented this IAC claim to the state courts in his amended rule 3.850 motion (*id.* at 35).

Respondent concedes Petitioner exhausted this IAC claim in the state courts (doc. 19 at 27, 65).  Respondent contends the state courts adjudicated the claims on the merits, and the adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 65–68).

      1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this IAC claim as a sub-claim (sub-claim "B") of Claim III in his amended Rule 3.850 motion (Ex. O at 120–25).  The state circuit court adjudicated the claim as follows:

> Defendant claims that his counsel was ineffective for failing to impeach Eli Lawson with his prior testimony at Mr. Eugene's trial on April 20, 2007.  However, he states only that the "prior testimony as to the 'fair and accurate' recordings intercepted is the part that could have been used to impeach Eli Lawson." This portion of Defendant's claim is facially insufficient, as he makes no specific allegation of what particular testimony by Eli Lawson is relevant, and how it would have been impeaching of Agent Lawson's testimony at Defendant's trial.  The Court can only assume that Defendant is implying that Agent Lawson's testimony that the tapes were "fair and accurate" could have been impeached with the differences in the tapes as transcribed at the two trials.  However, as noted previously, this appears to have nothing to do with the tapes being altered, and everything to do with the respective court reporters' ability to hear, comprehend, and transcribe the tapes at the two separate trials.
> . . . .
> Defendant asserts that Agent Lawson testified previously that "the defendant was not at Carl Eugene's house bagging cocaine as testified by Kelly Dede," because he was with Christopher Stanley in Milton, Florida, and that such testimony "could have been used in support of the defense."  Defendant has failed to show how such prior testimony by Agent Lawson might have been admissible in Defendant's trial, as he has failed to show that it is inconsistent with any portion of Agent Lawson's testimony in Defendant's trial.  Defendant does not allege that he was in Milton the entire night, and further, Defendant makes no assertion that any witness suggested that Defendant remained in Milton for the entire evening in question.  Indeed, Christopher Stanley testified at Mr. Eugene's trial that, at least for some time, he and Defendant were in Milton the night before the warrants were served.  <u>Attachment 8 at pages 158–182, 190–191</u>.  Mr. Stanley's testimony at Mr. Eugene's trial indicates

that he returned to Pensacola that night, and that he had given a "kilo" of cocaine to
Defendant.  <u>Attachment 8 at page 165</u>.  Defendant has failed to show that counsel
was deficient, or that he was prejudiced.  Defendant is not entitled to relief on this
basis.

(Ex. R at 321–22).  Petitioner argued this issue on appeal to the First DCA (Ex. S at 6).  The
appellate court affirmed the lower court's decision without written opinion (Ex. U).

Petitioner failed to show that defense counsel could have used Investigator Lawson's prior
testimony for impeachment.  As discussed *supra* in Ground Three, the fact that the court reporters'
transcriptions of the audio recordings played at each trial differed does not suggest that the audio
recordings themselves were different.  Therefore, Petitioner failed to show that if defense counsel
had investigated Investigator Lawson's prior testimony at Mr. Eugene's trial, counsel could have
used Lawson's prior testimony regarding the "fairness and accuracy" of the recordings to impeach
hiss trial testimony regarding the "fairness and accuracy" of the recordings.

Petitioner also failed to show that Investigator Lawson's prior testimony, regarding
Petitioner's presence in Milton, Florida with Christopher Stanley on a particular date, could have
been used to impeach Kelly Dede's testimony.  Under the Florida Evidence Code a party may attack
the credibility of a witness by introducing statements of the <u>witness</u> which are inconsistent with the
witness's present testimony.  *See* Fla. Stat. § 90.608(1).  Defense counsel could not have used
<u>Investigator Lawson</u>'s prior testimony to impeach <u>Kelly Dede</u>'s testimony.

Petitioner also failed to show that defense counsel's investigation of Lawson's prior
testimony would have led to evidence favorable to the defense, namely testimony from Christopher
Stanley that Petitioner was with him in Milton at the same time Kelly Dede stated Petitioner was
packaging cocaine at Carlton Eugene's house.  The state post-conviction court found as fact that
Christopher Stanley testified at Mr. Eugene's trial that, at least for some time, he and Petitioner were
in Milton the night before the warrants were served.  The court also found that Mr. Stanley's
testimony at Mr. Eugene's trial indicated that he returned to Pensacola that night, and that he had
given a "kilo" of cocaine to Petitioner.  These factual findings are supported by excerpts of Mr.
Eugene's trial transcript, attached to the state court's order (*see* Ex. R at 425, 430–32, 447, 450–51).
In light of these findings, Petitioner failed to show a reasonable probability that the outcome of his

trial would have been different if defense counsel had investigated Investigator Lawson's prior testimony.

Petitioner failed to demonstrate that the state court's adjudication of Ground Four was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to federal relief on Ground Four.

E.   Ground Five:  "Petitioner's constitutional Sixth Amendment right to effective assistance of counsel and Fourteenth Amendment right to due process of law under State and Federal Constitutions were violated when defense counsel failed to investigate the evidence against Petitioner and have the necessary information to adequately defend Petitioner during trial, by going to trial unprepared due to lack of diligence.  Had defense counsel investigated the evidence he would have discovered [ ] prior sworn testimony that could have been used to support the defense."

Petitioner alleges that defense counsel was deficient for failing to investigate Kelly Dede's prior sworn testimony (doc. 1 at 35–39).  Petitioner alleges Ms. Dede testified at his trial that she observed Petitioner packaging cocaine (the same cocaine that was subsequently seized during a search by law enforcement on April 3, 2006) for distribution (*id.* at 36).  Petitioner alleges Kelly Dede previously testified at Carlton Eugene's trial that "no one was bagging cocaine in her presence and that she did not even know if Petitioner had arrived at the house where she was after the cocaine had been packaged, and she did not know if the cocaine found at her house was the same cocaine that was at Carl Eugene's house the night before the April 3, 2006 search of her house." (*id.* at 36–37).  Petitioner contends he was prejudiced by defense counsel's alleged error because, although Terrance Stallworth and Demarous Harris testified that Petitioner sold them cocaine, it was only Kelly Dede's testimony that established that Petitioner sold cocaine within the time frame alleged in the charging document (*id.* at 39).  He additionally alleges that Kelly Dede's testimony was the only evidence of the amount of cocaine involved (*id.*).  Petitioner asserts he presented this IAC claim to the state courts in his amended rule 3.850 motion (*id.* at 40).

Respondent concedes Petitioner exhausted this IAC claim in the state courts (doc. 19 at 27, 71).  Respondent contends the state courts adjudicated the claims on the merits, and the adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 71–73).

1.   Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner raised this IAC claim as a sub-claim (sub-claim "C") of Claim III in his amended

Rule 3.850 motion (Ex. O at 120–21).  The state circuit court adjudicated the claim as follows:

> Defendant claims that his counsel was ineffective for failing to "investigate" Kelly Dede's prior testimony at Mr. Eugene's trial and to impeach her with certain inconsistencies.  In Defendant's trial, Kelly Dede testified Defendant was bagging cocaine for distribution.  Ms. Dede testified that she did not remember if anybody else was there bagging it with Defendant.  Attachment 7, at page 113.
>
> Defendant contends that Ms. Dede testified in Mr. Eugene's trial that no one packaged cocaine in her presence.  However, as to this ground, the record demonstrates that Defendant did not suffer Strickland prejudice.  Even if Dede's testimony at Defendant's trial had been so impeached, the record plainly reflects that (in addition to the recordings) Demarous Harris and Terrance Stallworth gave testimony which, by itself, supports the jury's verdict.  Attachment 7, at pages 51–71. Defendant has failed to demonstrate an entitlement to relief in his ground 3.

(Ex. R at 322).  Petitioner argued this issue on appeal to the First DCA (Ex. S at 6).  The appellate

court affirmed the lower court's decision without written opinion (Ex. U).

The state court's determination, that Petitioner failed to show he was prejudiced by counsel's

failure to impeach Kelly Dede's testimony, was reasonable.  At Petitioner's trial, Terrance

Stallworth testified that he bought drugs from Christopher Stanley (Ex. R at 361–62).  Stallworth

testified that Mr. Stanley introduced him to Petitioner as his cousin (*id.* at 363).  Stallworth testified

that on "three or four" occasions, but "no more than five," Mr. Stanley sent Petitioner to deliver

drugs to him (Stallworth) (*id.* at 363–64).  Mr. Stallworth testified that one of those transactions

involved 9 ounces of cocaine, and the others involved approximately 4 ounces (*id.* at 364).

Stallworth also testified that there are 28 grams in one ounce (*id.* at 365).  Stallworth testified that

Petitioner and Christopher Stanley "stayed in contact a lot," and that when he called Stanley to buy

cocaine, the cocaine was delivered by either Stanley or Petitioner or both (*id.* at 366–67).

Demarous Harris testified that he bought drugs from Christopher Stanley (Ex. R at 370, 372).

Harris testified that Mr. Stanley introduced him to Petitioner, who was nicknamed "Rough" (*id.* at

373).  Harris testified that on one or two occasions, Petitioner delivered cocaine to him, for him to

sell and then reimburse Stanley (known as "fronting") (*id.* at 374–75).  Harris testified that on April

4, 2006, he was supposed to deliver $7,000.00 to Petitioner as payment to Mr. Stanley for 9 ounces

of cocaine he had previously received from Stanley, but instead he gave Petitioner the 9 ounces (252 grams) of cocaine, because he (Harris) had a warrant for his arrest and knew that he could not sell it (*id.* at 376–79).

The state court determined that the testimony of Mr. Stallworth and Mr. Harris was sufficient for the jury to find Petitioner guilty of trafficking in more than 200 but less than 400 grams of cocaine, and conspiracy to traffic in that amount of cocaine.  This court must abide by the state court's interpretation of state law.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  In light of the state court's determination that the testimony of Mr. Stallworth and Mr. Harris was sufficient for the jury to find Petitioner guilty of trafficking, and conspiracy to traffic, in more than 200 but less than 400 grams of cocaine, Petitioner failed to show a reasonable probability that the result of his trial would have been different if defense counsel had impeached Kelly Dede's testimony with her prior testimony at Carlton Eugene's trial.

Petitioner failed to demonstrate that the state court's adjudication of Ground Five was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief.

## V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is

an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 14th day of September 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**